IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

KOTY CARAKER,
        Plaintiff,

v.

MINDI NURSE, *et al.*,
        Defendants.

Case No. 1:26-cv-01050-JEH

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Pontiac Correctional Center ("Pontiac"), filed a Second Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 19). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**II**

Plaintiff files suit against Illinois Governor JB Pritzker, Warden Mindi Nurse, Lieutenant Brennan Jibben, Sergeant Charles Lefler, Correctional Officer

1

Oluferi Adeyanju, and Kayla Fallen, Jane Does (Nurses), John Does (Extraction Team), and John and/or Jane Does (Internal Affairs Officers).

Plaintiff alleges he wrote to Defendant Governor Pritzker about various health and safety violations at Pontiac. On April 4, 2025, Plaintiff alleges he received a letter from Defendant Warden Nurse stating that his claims were false.

Plaintiff alleges Defendant Correctional Officer Adeyanju denied his request to take a shower on May 30, 2025, while Plaintiff was on suicide watch. Plaintiff asked to speak with Defendant Sergeant Lefler, but his request was denied. Plaintiff alleges he suffers from multiple mental health disorders and has poor impulse control. Plaintiff told Defendant Adeyanju he was going to start a fire in his cell. Plaintiff showed Defendant Adeyanju the mattress he tore up and the materials he planned to use to start the fire. Defendant Adeyanju allegedly began to taunt and provoke him.

When Defendants Adeyanju and Nurse Jane Doe were at his cell for med pass later that day, Plaintiff alleges he lit a tissue on fire and placed it on the mattress. Defendants Adeyanju and Nurse Jane Doe allegedly walked away. Plaintiff yelled "FIRE" and other inmates banged on the doors. (Doc. 19 at p. 6). Defendants Adeyanju and Nurse Jane Doe came back to Plaintiff's cell. Defendant Adeyanju told Plaintiff he was lying, as there was no fire. Plaintiff continued yelling "fire cell 1-49." *Id.* at p. 7. The 3-gallery officer then radioed for Defendant Segreant Lefler. When Defendant Lefler arrived, he did not have the keys to Plaintiff's cell. Approximately two or three minutes later, Plaintiff was pulled out of his cell that was filled with smoke.

Plaintiff was placed in a holding tank to be assessed by mental health. Plaintiff alleges Defendant Fallen, a mental health provider, falsely reported that she assessed Plaintiff when she had not. After Defendant Fallen falsely reported she assessed Plaintiff, Defendant Lefler told Plaintiff he was going to be escorted

2

back to his cell. Plaintiff refused and informed Defendant Lefler he would attempt suicide if he was placed back in his cell. An Extraction Team, consisting of six John Doe Defendants, removed Plaintiff from the holding tank, escorted him back to his cell, and conducted a strip search. As they closed the cell door, the John Does Defendants "started saying obscenities and saying homosexual things about [Plaintiff]." *Id.* at p. 9.

Plaintiff alleges he flooded his toilet. When the Extraction Team arrived at his cell, they ordered him to cuff up. Plaintiff alleges an unidentified officer placed the cuffs and leg shackles on extremely tight. Plaintiff alleges he was pulled out of the cell backwards and ordered to stand up and walk backwards. An unidentified officer allegedly forced Plaintiff's head down with his shield. After taking about fifteen steps, Plaintiff stopped walking due to the extreme pain. The Extraction Team allegedly told Plaintiff to stop resisting. Plaintiff was taken to a holding tank. Plaintiff alleges the unidentified officer who removed his cuffs and leg shackles bent his left pinky finger, causing excruciating pain. An unidentified officer used his shield to force Plaintiff's head to his feet, causing excruciating pain in his neck and back, restricting his airway, and causing his neck and back to pop multiples times.

When the Extraction Team left, Plaintiff yelled for medical attention. Defendant Nurse Jane Doe came to assess him. The Extraction Team opened the cell door, and an unidentified officer allegedly used his right hand and body weight to force Plaintiff into the wall. As Plaintiff told Defendant Nurse Jane Doe about his injuries, the officer allegedly fondled Plaintiff's hair and rubbed his face. Plaintiff alleges Defendant Nurse Jane Doe took his vitals but failed to assess his injuries and address the extreme pain in his wrists, legs, left pinky finger, back, and neck. Plaintiff alleges he was sedated and placed back in his cell.

Plaintiff remained on suicide watch and was assessed by mental health staff. During daily crisis assessments, Plaintiff asked to speak with Internal Affairs (Defendants John and/or Jane Does) and requested medical attention. Plaintiff alleges he still has not been seen by Internal Affairs or medical staff.

Plaintiff alleges he submitted an emergency grievance on July 3, 2025, and amended his grievance on September 18, 2025. Defendant Warden Nurse deemed his grievance was nonemergent.

### III

While Plaintiff was on suicide watch on May 30, 2025, he allegedly informed Defendants Correctional Officer Adeyanju and Nurse Jane Doe that he was going to start a fire in his cell and showed them the materials he was going to use to light it. Defendants Adeyanju and Nurse Jane Doe allegedly ignored Plaintiff's statements and did not provide any further mental health treatment. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id.* An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The prisoner must show that the

4

defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer,* 511 U.S. at 837). The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendants Adeyanju and Nurse Jane Doe based on their alleged deliberate indifference to Plaintiff's serious mental health needs.

After Plaintiff started a fire and was removed from his cell, he was taken to a holding tank to be assessed by Defendant Kayla Fallen, a mental health provider. Plaintiff alleges Defendant Fallen did not perform a mental health assessment and falsely reported that she had done so. The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Fallen based on her alleged deliberate indifference to Plaintiff's serious mental health needs.

After Plaintiff flooded his cell, an Extraction Team, which consisted of six John Doe Defendants, forcibly removed Plaintiff from his cell. Plaintiff alleges the John Doe Defendants placed the cuffs and leg shackles on extremely tight and forced him to walk backwards to a holding cell, causing extreme pain. When removing the cuffs, a John Doe Defendant allegedly bent Plaintiff's left pinky finger, causing excruciating pain. The John Doe Defendants also allegedly used their shields to force Plaintiff's head down, which caused excruciating pain in his neck and back, restricted his airway, and caused his neck and back to pop multiples times. To proceed on an Eighth Amendment excessive force claim, Plaintiff must show that the force was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986). This is so, as prison officials considering the use of force must balance the threat presented to inmates and prison officials against the possible harm to the inmate against whom the force is to be used. *Id.* at 320. "[W]hile a

plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001) (internal citations omitted). The Court must balance the amount of the force used against the need for the force. If no force is necessary, even *de minimis* force may not be used. *Reid v. Melvin*, 695 F. App'x 982, 983-84 (7th Cir. 2017). Based on Plaintiff's allegations regarding the Extraction Team's use of force, the Court finds that Plaintiff stated a plausible Eighth Amendment excessive force claim against the six John Doe members of the Extraction Team.

Plaintiff also claims the Extraction Team made obscene comments as they closed his cell door. "[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015); *see also Smith v. Myers*, No. 118CV02255TWPDLP, 2018 WL 3631285, at *1 (S.D. Ind. July 30, 2018) ("[A]lthough indefensible and unprofessional, isolated verbal abuse, harassment, and unprofessional conduct do not rise to the level of a constitutional violation for which relief may be granted in a civil rights case.")). The Extraction Team's isolated verbal insults do not rise to the level of a constitutional violation.

After the Extraction Team placed Plaintiff in the holding tank, a John Doe Defendant allegedly used his right hand and body weight to force Plaintiff into the wall. As Plaintiff told Defendant Nurse Jane Doe about his injuries, Defendant John Doe allegedly fondled Plaintiff's hair and rubbed his face. Plaintiff alleges Defendant Nurse Jane Doe took his vitals but failed to assess his injuries or address the extreme pain in his wrists, legs, left pinky finger, back, and neck. Based on his allegations, the Court finds Plaintiff has stated a plausible Eighth Amendment claim against Defendant Nurse Jane Doe based on her alleged deliberate

indifference to Plaintiff's serious medical needs and an Eighth Amendment excessive force claim against Defendant John Doe.

The John Doe members of the Extraction Team and the Jane Doe Nurses cannot be served. As such, Warden Mindi Nurse will remain a Defendant, in her official capacity only, to facilitate the identification of the Doe Defendants. *See Donald v. Cook Co. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) (concluding that a court may allow the case to proceed to discovery against a high-level official with the expectation that he will aid in identifying any Doe Defendants). Plaintiff may propound written discovery requests upon Warden Nurse aimed solely at identifying the Doe Defendants. After the Doe Defendants have been identified, Warden Nurse may move to be dismissed. Ultimately, it is Plaintiff's responsibility to identify the Doe Defendants and to file a motion to substitute the real names of the Doe Defendants. The failure to do so will result in the dismissal of the Doe Defendants without prejudice.

Plaintiff's allegations against Defendants Governor Pritzker, Warden Nurse, Sergeant Lefler, and John and/or Jane Does (Internal Affairs Officers) are too vague to proceed on a constitutional claim. Finally, Plaintiff named Defendant Jibben as a Defendant, but he did not include any specific allegations against Defendant Jibben in his Second Amended Complaint. Defendants Pritzker, Nurse (in her individual capacity), Lefler, John and/or Jane Does (Internal Affairs Officers), and Jibben are dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

**IT IS THEREFORE ORDERED:**

1)    According to the Court's Merit Review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on (1) an Eighth Amendment deliberate indifference claim against Defendants Oluferi Adeyanju, Nurse Jane Doe, and Kayla Fallen based on their alleged

7

deliberate indifference to Plaintiff's serious mental health needs on May 30, 2025; (2) an Eighth Amendment excessive force claim against Defendants John Does (members of the Extraction Team) based on their alleged use of excessive force on May 30, 2025; and (3) an Eighth Amendment deliberate indifference claim against Defendant Nurse Jane Doe based on her alleged deliberate indifference to Plaintiff's serious medical needs on May 30, 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Warden Mindi Nurse will remain a Defendant in her official capacity to assist Plaintiff with identifying the Doe Defendants.

3) Defendants Pritzker, Nurse (in her individual capacity), Lefler, John and/or Jane Does (Internal Affairs Officers), and Jibben are DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE Defendants Pritzker, Lefler, John and/or Jane Does (Internal Affairs Officers), and Jibben.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and

the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: May 21, 2026

s/Jonathan E. Hawley
U.S. District Judge